FAUST & FORDEN, INC., Respondent,

v.

Marvin GREENBAUM, Appellant.

No. 24688.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Rehearing Denied Dec. 4, 1967.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for appellant.

James B. Lowe, Kuraner, Oberlander, Lamkin & Dingman, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiff, Faust & Forden, Inc., successor to Hermitage, Inc., is a retail dealer in home furnishings and interior decorations. During 1961, the defendant, Marvin Greenbaum, and Mrs. Greenbaum, planned to and did construct an eleven room residence on Mission Drive, Mission, Kansas, at a cost in excess of $100,000. Mr. Greenbaum and Mr. Jack Faust of plaintiff corporation were acquainted with each other and the Greenbaums asked Mr. Faust to come to their home and discuss furnishings and decorations for the proposed new house. At the ensuing meeting the parties entered into an oral contract under which plaintiff was to "furnish items" for the new home at "cost plus 10 percent, plus freight". In the instant suit plaintiff alleged it had

fully performed, but that defendant had failed and refused to pay a part of the balance due under the contract, which unpaid amount plaintiff in its petition computed to be $9,159. Defendant by his answer admitted the contract, asserted payment had been made in full, said plaintiff was attempting to charge more than "cost plus 10 percent" and counterclaimed for both compensatory and punitive damages. A jury was waived and the court, after hearing the evidence in some detail, found for and entered judgment in favor of plaintiff in the sum of $6,363.99.

The defendant has appealed and presents two assignments of error. He says (1) "On a cost plus contract where funds are advanced to the contractor", [a] the contractee must be charged only for actual costs, [b] the funds advanced may only be used for purposes of performing the contract and [c] the contractor must "take advantage of all possible discounts and savings". (2) [a] the court erred in admitting "business records" of plaintiff and [b] even if such records were properly admitted, the same "were insufficient because they did not show respondent's actual costs".

This is a court tried case. Rule 73.01 [d], V.A.M.R. provides:

"The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses".

To the same effect see Section 510.310, V.A.M.S. and Browder v. Milla, Mo.App., 296 S.W.2d 502, 505.

Mr. and Mrs. Greenbaum finally determined to build a house of French architectural style and decided to consult Mr. Raymond Carter, an architect in Oklahoma City, about it. Mr. Faust accompanied them to Oklahoma City for that purpose

and they paid his expenses. Only a few of the desired furnishings were to be found in plaintiff's stock or in Kansas City. The Greenbaums were doubtful about being able to obtain some of the items which they sought even in New York City. In any event, they requested that Mr. Faust go to Paris and after personal inspection, possibly purchase some of the articles in that city. Mr. Faust made the Paris trip and made some purchases there. Before his departure Mr. Greenbaum gave him $5,000 in cash. This advance was in part to cover expenses and in part to pay cash for any articles bought in Paris, where neither plaintiff nor defendant had established credit with the merchandising houses. The parties also traveled to New York City on a buying trip and again Mr. Greenbaum paid the expenses.

The defendant and his attorney found canceled checks showing payment to plaintiff by defendant of more than $30,000. However, plaintiff's statement of the account in its petition purported to give defendant credit, not only for the payments by check, but also for those made in cash, plus credit for some returned items. This showed total credits in excess of $50,000. Before or during the early stages of the trial, the parties stipulated that defendant was entitled to a credit for payments made in the sum of $51,722.24.

■ As stated in appellant's brief "the chief evidentiary basis of respondent's case was some 257 exhibits (Exhs. Nos. 1–257) which were offered and received in evidence". Mr. Faust, testifying for plaintiff, described these exhibits as "control sheets", said he was the custodian or keeper of the records, that they were kept in the regular course of business, were made at or about the time of the transactions which they purport to represent, and were prepared by him. He testified further that when any customer buys or orders an item a "control sheet" is made "with the customer's name, the number of the item, what it is (table or chair) and the selling price". He

said further that Exhibits 1 to 257, inclusive, were such control sheets and covered all the items and charges made under the contract with defendant. These control sheets were compiled from invoices received from suppliers. Exhibit A is a compilation which purports to summarize the contents of Exhibits 1 to 257, was prepared by Mr. Faust and his attorney from the control sheets and was for trial use. As the trial progressed, this first Exhibit A was referred to by counsel as "Old Exhibit A". Errors were found and corrected in a new Exhibit A, and the last summary as corrected was called "Corrected New Exhibit A". These "control sheets" were apparently the first bookkeeping charge made on any item purchased by plaintiff for defendant. This was the procedure not only as to defendant's purchases, but those made by any other customers. If the article was not in stock or ordered from a catalog, the control sheet was made up when the wholesaler's invoice was received. We believe and hold that it was not error to receive Exhibits 1 through 257 in evidence. These exhibits constituted not only the best, but apparently the only written evidence regarding the charges made. Section 490.680, V.A.M.S. states:

"Records competent evidence, when,

"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission".

The trial court apparently believed and we believe that these records met the test and are within the rule as stated by the court in Kennedy v. Boken Associates, Inc., Mo.App., 381 S.W.2d 39, 43, one of the cases relied upon by defendant. There the court said:

"In order to render an instrument admissible in evidence under that act there must be testimony from one or more qualified witnesses of its identity, mode of preparation, and that it was made in the regular course of business, at or near time of the act, condition, or event in evidence, and that the sources of information, method and time of preparation were such as to justify its admission".

The trial court and counsel painstakingly went over each of these 257 exhibits and the invoices from which they were made. It is not, we think, surprising that some errors were made in the summary prepared for trial use by plaintiff and its counsel. These errors were of different kinds and we shall specifically refer to some of them.

1. Defendant was charged $66 for a pair of andirons, but the control sheet showed $59.20. Mr. Faust testified that Mrs. Greenbaum did not like the first pair taken from plaintiff's stock so a second pair was ordered from a supplier named Drew, and the $66 charge was correct.

2. An item bought in Paris for 850 new francs. The exchange rate at the time was five francs to the dollar. The correct charge would therefore be $170 instead of $197, which was charged. This error was admitted and the difference of $27 was stricken.

3. Two rugs bought from Stark Brothers for $4,745.16 as shown by Exhibits 95 and 111, but Exhibit A shows payment to Stark Brothers of only $3,558.87. Mr. Faust stated that they still owed the supplier for the difference.

4. Freight charge $22.79 was entered twice on Exhibit A, the compilation made by plaintiff's attorney. The mistake was conceded and one charge of $22.79 was dropped.

5. Cost of a chest bought from Dunbar, $528. Defendant was charged $590.30 for this particular chest. Plaintiff's explanation of the difference was that the cost of

the chest was $528, his 10 percent commission was $52.80 and there was a delivery charge of $9.50, making a total of $590.30. There was not a separate invoice for each article listed as a separate exhibit for the simple reason that sometimes two or more items were shown on the same invoice.

In his brief defendant says: "Respondent rarely took the cash discounts offered on almost every invoice for prompt payment". Defendant says plaintiff should have used the cash advancements which defendant made and should have secured such discounts. Plaintiff's version respecting the Paris purchases for which defendant advanced $5,000, was that he paid cash at the time of the purchases and the invoices reflected the discount, and the net was all that was charged to defendant. Plaintiff testified further that any other advancements were in those instances where the supplier would not extend credit and that defendant at no time had a credit balance with plaintiff.

There is one other listed charge which should receive specific comment. Originally there was a charge against defendant for over $1300 covering Kansas sales tax. Plaintiff, at the time, was a Kansas corporation, but defendant resided in Missouri —hence the Kansas sales tax did not accrue. This item has not been paid by plaintiff and it was deleted from the account against defendant.

There are other costs that sometimes do not show on the original invoices. For example, scotchguarding for the protection of fabrics, postage and import duties. Defendant also complains that plaintiff's expenses on the Paris and New York City trips were not itemized and receipts were not presented. However, there is no real contention that such charges were unreasonable or were not incurred. The trial court specifically found that they were reasonable. There is no showing in those few instances where plaintiff received the discount for prompt or cash payments that defendant did not also receive it.

We do not believe it is necessary for us to go over each of these 257 separate charges. The trial court spent more than two days doing just that and in this task it had the help of counsel for both parties in ferreting out any errors. The trial court, too, saw and heard the witnesses and we shall accept the conclusions of that court as to the validity of the oral explanations.

■ Really, it is not defendant's position that plaintiff took discounts for prompt payment and then charged defendant the invoice price, plus 10 percent, but rather that under the law plaintiff was required to take all possible discounts for quick payment and pass the savings on to defendant. We reject this theory. We do not believe plaintiff was required to do so, especially since there is no substantial evidence that defendant had advanced funds for that purpose or even had a credit balance.

Now the trial court in its finding, said:

"The discount terms normally allowed by manufacturers to retail dealers rightfully belongs to plaintiff. The relationship between plaintiff and defendant was that of a retail business establishment, or interior decorator, and customer. No principal agent relationship existed".

In its petition plaintiff alleged charges of $60,455.88 and total payments of $51,296.88, leaving an unpaid balance of $9,159. At the trial it was stipulated that the payments amounted to $51,722.24 or an increase of $425.36. This would reduce the balance to $8,733.64. By deletion of the $1380.54 charge for Kansas sales tax it was further reduced to $7,353.10. The judgment was for $6,363.99, showing that the court disallowed the further sum of $989.11, this being for errors and mistakes which were revealed in the item by item examination of the 257 exhibits which made up or comprised the whole account.

■ Appellant in his brief says that sometimes respondent "did take the cash discount" and cites us to "Tr. 88, 130 and

148." We have examined those transcript references and as to the first two it clearly shows that defendant was given the benefit of the discount. As to the third item it is not clear that a discount was taken although Mr. Faust admitted that his check to the supplier indicated that it had been taken. Aside from these three items defendant points out no other instance where he claims that plaintiff took discounts for prompt payment but did not pass the saving on to defendant. It is true, as defendant says, that plaintiff takes the position that any discounts for prompt payment belonged to it and it was not required to pass them on to defendant. Plaintiff even produced an expert witness from the decorating trade who so testified and the trial court specifically stated its accord with such view. However, after a careful examination of the record, we have concluded that plaintiff took very few discounts for prompt payment and those were in instances where cash or payment in advance was made—for example cash payments made in Paris and purchases where plaintiff did not have approved credits. In those instances the original invoices reflected the discounts and defendant received the benefit.

In our opinion under the evidence here no discounts were received by plaintiff that were not passed on to defendant. Defendant was charged only for plaintiff's actual costs, plus 10 percent, and it is unnecessary to decide which one would be entitled to the discount, if any such had been taken by plaintiff and had not been passed on to defendant.

It is our opinion that each of appellant's two asignments of error is without merit. He contends first that Exhibits 1 to 257, inclusive, were not admissible as business records. Those exhibits were the first, best and only complete bookkeeping records covering the transactions. There was testi-mony by Mr. Faust as to their identity, mode of preparation and contemporaneous making. The trial court found the exhibits were admissible. We agree and rule this point against appellant. The other assignment is that plaintiff can only charge defendant his *actual cost* and can only predicate his commission on such actual cost. We believe that plaintiff did just that. We reject defendant's position that plaintiff was required to take advantage of all discounts for prompt payment and pass this saving along to defendant. This second assignment is overruled. We know of no way in which this account could be substantiated with bookkeeping records except by admitting plaintiff's control sheets which were made up from the invoices submitted by the suppliers. We believe that the controversy between plaintiff and defendant covering this account was gone into very fully. Counsel for defendant went over each exhibit in open court and pointed out any claimed errors. The trial court heard the oral explanations of plaintiff and we defer to its judgment as to the credibility of this oral testimony. We do not believe that a new trial or a second accounting would likely lead to any fairer result than did this first one. Our attention has been invited to opinions from other jurisdictions to the effect that in every contract there is an implied covenant of good faith and fair dealing. We agree, but subscribing to that rule does not require reversal of this judgment. Appellant has pointed out no reversible error and we find none.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.